SEYFARTH SHAW LLP
Jesse L. Miller (SBN 183229)
jmiller@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105-2930
Telephone:   (415) 397-2823
Facsimile:   (415) 397-8549

Attorney for Defendant
TIMOTHY MUTTON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCI BERTUZZI, DERIVATIVELY ON BEHALF OF PETRA IQ, LLC A CALIFORNIA LIMITED LIABILITY COMPANY<br><br>          Plaintiff,<br><br>   v.<br><br>TIMOTHY MUTTON,<br><br>          Defendant,<br><br>PETRA IQ, LLC<br><br>          Nominal Defendant. | Case No. _____<br><br>**DEFENDANT TIMOTHY MUTTON'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT**<br><br>(Los Angeles County Superior Court Case No. 24TRCV02713)<br><br>Complaint filed:    August 14, 2024 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** Defendant Timothy Mutton ("Mutton") hereby files this Notice of Removal pursuant to 28 U.S.C. § § 1332, 1441(a) and (b), and 1446 based on diversity of citizenship jurisdiction in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California and states removal is proper for the following reasons:

## I.    BACKGROUND

1. On August 14, 2024, Plaintiff Marci Bertuzzi, derivatively on behalf of Petra IQ, LLC ("Bertuzzi") filed a Shareholder Derivative Complaint for Removal of Manager, Breach of Fiduciary Duty, Conversion, Money Had and Received, Unjust Enrichment, Gross Mismanagement, and Accounting in the Superior Court of California for Los Angeles County  which is entitled *Plaintiff Marci Bertuzzi, derivatively on behalf of Petra IQ, LLC v. Timothy Mutton, et al.*, Case No. 24TRCV02713. A copy of the state court complaint (the "Complaint") is attached as Exhibit A. The Complaint is a shareholder derivative action purportedly brought on behalf of Petra IQ, LLC ("PIQ" or the "Company"), and seeks monetary damages from the individual defendants on behalf of PIQ, among other relief.

2. As of the date of removal, none of the defendants have been served with the Complaint, a summons, or any other process, pleadings, or orders in the state court action.

3. Pursuant to 28 U.S.C. § 1446(a),  all "process, pleadings, and orders" served upon defendants shall be attached to the notice of removal. Because no defendants have been served, no process, pleadings, or papers need to be attached.

## II.    DIVERSITY JURISDICTION

4.    This is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by Defendant Timothy Mutton ("Mutton") pursuant to the provisions of 28 U.S.C. § 1441(b) as it is a civil action wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between citizens of different states.

5.    While the Complaint does not specify the dollar amount of damages sought, the allegations reflect the amount in controversy exceeds $75,000, exclusive of interest and costs. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy."). Specifically, the Complaint alleges Mutton's purported "unlawful use of Company funds has deprived the Company of at least $155,000.00 in funds, plus applicable interest." Ex. A ¶ 33. The Complaint also alleges Mutton's purported misappropriation of $155,000 in PIQ funds has caused Bertuzzi to not receive any quarterly distributions from PIQ. *Id.* at ¶ 37. These allegations reflect the amount in controversy clearly exceeds $75,000, exclusive of interest and costs.

6.    For diversity purposes, a person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983), *superseded by statute on other grounds as stated in Saraca Media Grp., Inc. v. Liehong Zhuang*, 2020 WL 8 4016742, at *2 (S.D.N.Y. July 16, 2020). A party's residence is prima facie evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016). A party is domiciled where the party "resides with the intention to remain or to which [the party] intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Likewise, for diversity purposes, a limited liability corporation is a citizen of all states where its members are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). However, a limited liability corporation's citizenship is disregarded for diversity purposes if it is a nominal party. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).

7.     The Complaint identifies Bertuzzi as a citizen of Texas and Mutton as a citizen of California based on the parties' residence. Ex. A ¶ 7, 9; *see also Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (a party's residence is prima facie evidence of his or her domicile). Moreover, PIQ's citizenship as a limited liability corporation is disregarded for diversity purposes as it is a nominal party. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). As such, removal is proper as there is complete diversity between Bertuzzi and Mutton. 28 U.S.C. § 1332(a). Moreover, the so-called "forum defendant rule" does not otherwise bar removal because Mutton has not been "properly joined and served." *See Kornfeind v. Kia Am., Inc.*, 2023 WL 8456111, at *3 (C.D. Cal. Dec. 6, 2023) (a forum defendant successfully removes a case under snap removal before it is "properly joined and served."); *see also* 28 U.S.C. § 1441(b)(2).

## III.    <u>TIMELINESS OF REMOVAL</u>

8.     Removal is timely pursuant to 28 U.S.C. § 1446(b). No defendant has been served. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding that 30-day deadline to remove does not begin until defendant is served by "formal process"); *Regal Stone Ltd. v. Longs Drug Stores Cal., L.L.C.*, 881 F. Supp. 2d 1123, 1128 (N.D. Cal. 2012) (defendant may properly remove before being served). Further, because there are no defendants who have been "properly . . . served in the action," there are no defendants whose consent or concurrence in this removal is necessary. *See Destfino v. Reiswig*, 630 F.3d 952, 956–57 (9th Cir. 2011) (removal notice effective despite not all defendants being joined as non-joining defendants had not been served).

## IV.    <u>VENUE</u>

9.     Pursuant to 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The Superior Court of California for Los Angeles

County is located within the Central District of the United States District Court for California. Accordingly, venue in this Court is proper under 28 U.S.C. § 1441(a).

## V.    **SERVICE AND FILINGS OF NOTICES**

10.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Bertuzzi and, together with a copy of the Notice of Removal, will be filed shortly with the Clerk of the Superior Court of California for Los Angeles County in the State Court Action.

11.    Accordingly, Defendant Timothy Mutton prays this action be removed from the Superior Court of California for Los Angeles County to this Court.


DATED: August 20, 2024                    Respectfully submitted,

                                          SEYFARTH SHAW LLP

                                          By:    /s/ Jesse L. Miller
                                                 Jesse L. Miller
                                                 Attorneys for Defendant
                                                 Timothy Dutton

KEVIN KHACHATRYAN (Bar No. 314410)
kevin.khachatryan@huschblackwell.com
CARA M. ARNOLD (Bar No. 350727)
cara.arnold@huschblackwell.com
HUSCH BLACKWELL LLP
355 S. Grand Avenue, Suite 2850
Los Angeles, California 90071
Telephone:    (213) 337.6550
Facsimile:    (213) 337.6551

Attorneys for Plaintiff,
MARCI BERTUZZI, DERIVATIVELY ON BEHALF OF
PETRA IQ, LLC, A CALIFORNIA LIMITED LIABILITY
COMPANY

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/14/2024 11:53 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By M. Horan, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – TORRANCE COURTHOUSE**

| | |
|---|---|
| MARCI BERTUZZI, DERIVATIVELY ON BEHALF OF PETRA IQ, LLC A CALIFORNIA LIMITED LIABILITY COMPANY. | Case No. 24TRCV02713 |
| Plaintiff, | VERIFIED MEMBER DERIVATIVE COMPLAINT ON BEHALF OF PETRA IQ, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, FOR: |
| vs. | |
| TIMOTHY MUTTON, | 1) **REMOVAL OF MANAGER** |
| Defendant, | 2) **BREACH OF FIDUCIARY DUTY** |
| PETRA IQ, LLC | 3) **CONVERSION** |
| Nominal Defendant. | 4) **MONEY HAD AND RECEIVED** |
| | 5) **UNJUST ENRICHMENT** |
| | 6) **GROSS MISMANAGEMENT** |
| | 7) **ACCOUNTING** |
| | **(RULLCA §§ 17704.10(b)(1), 17701.13(d)(6) – (7))** |

HUSCH BLACKWELL LLP
355 SOUTH GRAND AVENUE, SUITE 2850
LOS ANGELES, CALIFORNIA, 90071-5704
(213) 337-6550

VERIFIED MEMBER DERIVATIVE COMPLAINT

HB: 4885-4577-9928.1

Plaintiff Marci Bertuzzi ("Bertuzzi" or "Plaintiff"), a 50% Owner and Member of Defendant Petra IQ, LLC, a California limited liability company ("Petra IQ") and suing derivatively on behalf of Petra IQ, alleges the following:

**NATURE OF CASE**

1. This is a derivative action by Plaintiff to redress the past and ongoing egregious misconduct of Defendant Timothy Mutton ("Mutton" or "Defendant") directed at Petra IQ. Mutton, in his role as the other 50% Owner and Managing Member of Petra IQ, improperly enriched himself at the expense of Petra IQ and Plaintiff by misappropriating significant sums of money from Petra IQ, therefore depriving Plaintiff of her rightful distributions.

2. Defendant grossly breached various fiduciary duties and acted unlawfully by misappropriating company funds, transferring company money to himself, using corporate assets for his personal expenses, systematically depriving Bertuzzi of her rights to distributions under the Operating Agreement, obstructing Bertuzzi's access to corporate records and financial information, and grossly mismanaging Petra IQ, among other acts, by failing to timely pay mandatory quarterly tax payments, state taxes, and employment taxes.

3. Petra IQ is a California limited liability company that provides various data and risk management consultancy services to clients in the energy and utility sectors including but not limited to data asset management, data lifecycle management, data governance, enterprise data strategy planning, risk mitigation, and data stewardship.

4. Through this action, Plaintiff, on behalf of Petra IQ, seeks the return of misappropriated funds and the removal of Defendant Mutton, Managing Member of Petra IQ, from any managerial roles in Petra IQ, and an order barring Mutton from serving in any managerial roles in Petra IQ as a result of Mutton's various breaches of fiduciary duties to Petra IQ and Bertuzzi.

5. Mutton's ongoing misappropriation, embezzlement, self-dealing, and gross mismanagement allowed him to personally benefit and profit from Petra IQ's business to the substantial detriment of Plaintiff and Petra IQ.

6. Plaintiff has standing to bring this action. Plaintiff is 50% Owner and Member of Petra IQ and has been 50% Owner and Member at all relevant times alleged in the Complaint.

HB: 4885-4577-9928.1

## THE PARTIES

7.  Plaintiff Marci Bertuzzi is an individual residing in the state of Texas who has owned a 50% interest of Petra IQ since its inception on or around July 24, 2018.

8.  Nominal Defendant Petra IQ is a California limited liability company that maintains its principal office at 6060 Center Drive 6th Floor in Los Angeles, California.

9.  Defendant Timothy Mutton is an individual residing in Los Angeles, CA.  Mr. Mutton is the other 50% owner and has been a Managing Member of Petra IQ since its inception on or around July 24, 2018.

## JURISDICTION & VENUE

10.  This court has subject matter jurisdiction over this civil matter pursuant to Article VI, § 10 of the California Constitution. This court also has subject matter jurisdiction over this civil matter because Petra IQ's Operating Agreement states that California courts shall have jurisdiction over any lawsuits related to Petra IQ.

11.  Venue is proper in this Court pursuant to California Code of Civil Procedure (C.C.P.) § 395 because Petra IQ's principal place of business is 6080 Center Drive, 6th Floor, Los Angeles, CA 90045, within Los Angeles County.

12.  Venue is proper in this Court pursuant to CCP § 395 because many of the alleged wrongs suffered by Petra IQ and Defendant's unlawful actions occurred in Los Angeles County. For example, many of Defendant's improper expenditures and cash withdrawals occurred in Los Angeles County.

13.  Venue is also proper in Los Angeles County because Defendant Mutton resides in Los Angeles County.

14.  Accordingly, Los Angeles County is the most suitable venue in California for this action.

## FACTUAL ALLEGATIONS

15.  Petra IQ was formed by Plaintiff Marci Bertuzzi and Defendant Timothy Mutton on July 24, 2018.  Petra IQ provides data and risk management consultant services to clients in various industries.

16. Plaintiff Bertuzzi and Defendant Mutton each own 50% of Petra IQ and are the only Members of the company.

VERIFIED MEMBER DERIVATIVE COMPLAINT
HB: 4885-4577-9928.1

17. On July 24, 2018, Bertuzzi and Mutton entered an Operating Agreement in connection with the inception of Petra IQ.

18. The Operating Agreement sets forth several important rules and procedures to be followed, such as:

- Each Manager and Officer shall have a fiduciary duty of loyalty and care similar to that of managers of business corporations organized under the laws of California.

- The Managers and Officers shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Managers excluding the interested Manager, consents thereto.

- Distributions shall be issued on a quarterly basis, based upon the Company's fiscal year. Each Member shall receive a percentage of the overall distribution that matches that Member's percentage of Membership Interest in the Company.

- All financial records including tax returns and financial statements will be held at the Company's primary business address and will be accessible to all Members.

19. In or around November 2022, Plaintiff resigned as a Manager of Petra IQ.

20. After Plaintiff resigned from Petra IQ, Mutton began raiding the Company's bank account in a series of brazen transactions. Over a few-day period from March 24, 2023 to March 30, 2023, Mutton transferred over $37,000 from Petra IQ's Wells Fargo bank account to his personal bank account. Essentially, Mutton began treating the Company's assets as his own.

21. When Plaintiff learned that Mutton had misappropriated Petra IQ funds, she made numerous Inspection Demands to Mutton for the Company's complete books and records, as was her right under California's Corporation Code §17704.10 and Petra IQ's Operating Agreement. The Demands initially went unanswered.

22. In several instances, Plaintiff requested the Company's bank statements, transactional records, and the Company's current accounting statements, including the Company's balance sheet and profit & loss statements and monthly bank statements which would reflect Defendant's transactions beginning March 1, 2023.

VERIFIED MEMBER DERIVATIVE COMPLAINT

HB: 4885-4577-9928.1

23. It was not until a Document Inspection that occurred on May 26, 2023, following months of strategic delays and misdirection from Defendant, that Defendant finally provided March and April 2023 bank statements for the Company's Wells Fargo Checking Account and two redacted pages of bank statements for Mutton's personal savings account.

24. At the document inspection, both Defendant and the Company were represented by attorneys Yana Komsitsky (Defendant's wife) and Andrew Escobar of Seyfarth Shaw.  During the inspection, Ms. Komsitsky made various incorrect representations regarding the purpose of the transfers and tried to cover up her husband's obvious fiduciary breaches and embezzlement of Petra IQ funds.

25. However, Plaintiff never consented to Seyfarth representing both Petra IQ and Defendant Mutton. Under the California Rules of Professional Conduct, Seyfarth cannot represent both Petra IQ and Defendant Mutton without Plaintiff's consent because Petra IQ's interests directly contradict and are diametrically opposite to those of Mr. Mutton and Ms. Komsitsky, who are more interested in stripping Petra IQ of its assets for their personal gain.

26. To date, Defendant has not provided records responsive to Plaintiff's Inspection Demands. Defendant has not provided the requested financial statements and bank account statements in direct violation of Article IV, Section B of the Operating Agreement and California's Revised Uniform Limited Liability Company Act ("RULLCA") §§ 17704.10 and 17701.13.

27. Nevertheless, the limited records that Defendant did provide demonstrate that Defendant embezzled Company funds by improperly withdrawing over $37,000 from the Company's bank account as follows:

- On March 24, 2023, Defendant withdrew $6,000 from the Company's account.  It is unclear where this money went because Defendant failed to make available records showing any correlating deposit into an account held or maintained by or on behalf of the Company.

- On March 29, 2023, Defendant withdrew $30,000 from the Company's account and deposited the same into his personal savings account.

- On March 30, 2023, Defendant withdrew $1,000 from the Company's account.  It is unclear where this money went because Defendant failed to make available records

5

HB: 4885-4577-9928.1

showing any correlating deposit into an account held or maintained by or on behalf of the Company.

28. The bank statements also showed several improper transfers and comingling of funds between the Company's account, Defendant's personal savings account, and another unknown account:

- On April 10, 2023, Defendant transferred $2,400 from Defendant's personal savings account to the unknown account.

- On April 13, 2023, Defendant transferred $325.19 from Defendant's personal savings account to the unknown account.

- On April 17, 2023, Defendant transferred $8,097.077 from Defendant's personal savings account to the unknown account.

- On April 21, 2023, Defendant withdrew $4,000 in cash from Defendant's personal savings account and deposited it into the Company's account.

- On April 28, 2023, Defendant transferred $5,000 from Defendant's personal savings account to the unknown account.

29. Despite multiple requests from Plaintiff and later, Plaintiff's attorneys, Defendant refused to explain the purpose of the withdrawals and transfers and further refused to produce bank statements and other information that would enable Plaintiff to ascertain the recipient or purpose of the transfers as required by Article IV, Section B of the Operating Agreement and RULLCA.

30. Further, the Company's bank statements reveal many other highly suspicious and unprecedented transactions totaling tens of thousands of dollars that appear to lack any business purpose.  These transactions include, but are not limited to, the following:

- 8/2/2023    Best Buy                    $ 54.73
- 8/2/2023    The Hummus Factory          $ 41.64
- 7/28/2023   Check # 1104                $ 1,225.91
- 7/17/2023   Check # 1103                $ 8,097.77
- 7/17/2023   Yeti                        $ 219.00
- 7/14/2023   Check # 1101                $ 7,950.00
- 7/11/2023   Amazon                      $ 75.56

6

HB: 4885-4577-9928.1

- 7/3/2023  Amazon                           $  14.20
- 6/28/2023  Amazon                          $  16.78
- 6/27/2023  Amazon                          $   36.12
- 6/22/2023  TST Have a great Los Angeles    $  22.70
- 6/22/2023  TST Have a great Los Angeles    $   4.83
- 6/20/2023  Amazon                          $  55.18
- 6/20/2023  Amazon                          $  32.84
- 6/14/2023  Amazon                          $  76.64
- 6/14/2023  Amazon                          $   25.12
- 6/14/2023  **Cash withdrawals**            **$ 9,010.00**
- 6/13/2023  Amazon                          $  25.17
- 6/12/2023  Islands Westchester             $  65.37
- 6/12/2023  Amazon                          $  76.64
- 6/12/2023  Amazon                          $  29.55
- 6/8/2023   Staples                         $ 91.95
- 6/7/2023   Amazon                          $ 8.17
- 6/6/2023   Best Buy                        $ 223.99
- 6/5/2023   Amazon                          $ 28.44
- 6/5/2023   Amazon                          $ 164.14
- 6/5/2023   Amazon                          $ 9.87

31. Despite repeated requests from Plaintiff and Plaintiff's counsel, Defendant did not explain the purpose of these transactions, nor did Defendant produce any documents that would enable Plaintiff to ascertain their legitimacy.

32. Defendant has continued looting Petra IQ assets to present day.  On June 21, 2024, Defendant wrote himself a check for $50,000.00.  Defendant continues to use the Petra IQ corporate credit card for personal expenses, including dining, household purchases, and food delivery.

33. On information and belief, Defendant's unlawful use of Company funds has deprived the Company of at least $155,000.00 in funds, plus applicable interest.  However, Plaintiff cannot ascertain

7

the true scale of Defendant's misconduct because Defendant has not produced financial statements and records. Plaintiff believes that further substantial evidentiary support will exist for these allegations and the extent of Defendant's misconduct after discovery, since much of the evidence supporting Plaintiff's allegations are within the exclusive control of Defendant and Defendant's agents.

34. On information and belief, to further conceal his financial misconduct, Defendant began diverting payments that Petra IQ received from its clients to different bank accounts beginning in May 2024.

35. Further, on information and belief, Defendant continues to grossly mismanage Petra IQ's affairs by neglecting to pay mandatory estimated quarterly tax payments and employment taxes, which exposes the Company to interest and other penalties.

36. Since Plaintiff's resignation as Manager, Defendant, as the sole Managing Member of Petra IQ, has failed to issue Plaintiff her quarterly share of distributions in breach of Article IV, Section C of the Operating Agreement.

37. On information and belief, if Defendant had not misappropriated $155,000 in Petra IQ funds, Plaintiff would have received quarterly distributions from Petra IQ. However, since stepping down as Manager, Defendant has not issued *any* distributions to Plaintiff.

38. Rather, and upon information and belief, Defendant has unilaterally paid himself disproportionate distributions in unknown amounts despite neglecting to issue Plaintiff equal share, in further breach of his fiduciary duties.

## FIDUCIARY DUTIES OF MUTTON AS MANAGING MEMBER

39. Pursuant to Article III, Section H and Article VI, Sections A-C of the Operating Agreement and by reason of his position as Managing Member of Petra IQ, Defendant owed the Company and Plaintiff fiduciary obligations of trust, loyalty, good faith, and due care, and was required to use his utmost ability to control and manage Petra IQ in a fair, just, honest, and equitable manner. Defendant was required to act in furtherance of the best interests of Petra IQ, so as to benefit Plaintiff equally. Defendant owed to Petra IQ and Plaintiff, the fiduciary duty to exercise good faith and diligence in the administration and use of Petra IQ, and he also owed the highest obligations of fair dealing.

40. Defendant further owed to Petra IQ and Plaintiff the fiduciary duty of loyalty requiring that

8

HB: 4885-4577-9928.1

he favor Petra IQ's interests and that of Plaintiff over his own while conducting the affairs of Petra IQ and refrain from using his position, influence, or knowledge of the affairs of Petra IQ to gain personal advantage.

## DEMAND EFFORTS

41. Plaintiff brings this action derivatively, on behalf of and for the benefit of, Petra IQ to redress injuries suffered by the Company as a direct result of the breach of fiduciary duties by the Defendant.

42. Plaintiff will adequately and fairly represent the interests of Petra IQ and has retained competent counsel, experienced with derivative litigation, to enforce and prosecute this action.

43. At all relevant times since the formation of Petra IQ, Plaintiff has owned a 50% share of the Company.

44. Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth below.

45. Plaintiff made several demands on the Board for complete access and inspection of the Company's books and records, including all financial information to which she is entitled to as 50% Member and Owner of Petra IQ.

46. Petra IQ, acting as a vehicle for Defendant's misconduct, did not produce up-to-date financial records and did not produce *any* current profit-loss statements, balance sheets, or cash flow statements despite exhaustive efforts on Plaintiff's behalf, which included multiple emails, voicemails, and letters from both Plaintiff and Plaintiff's counsel from March through August of 2023.

47. Further, Plaintiff, through counsel, demanded mandatory mediation pursuant to Article XII of the Company's Operating Agreement several times between April 2023 and present day. Defendant has not accepted Plaintiff's request to mediate this dispute. Therefore, pursuant to Article XII, Plaintiff is "free to file suit."

48. Petra IQ and Plaintiff have and will continue to suffer significant financial losses due to Defendant's wrongdoings. Defendant, as the sole Managing Member of Petra IQ, has not responded to any of Plaintiff's demands to mediate the dispute as required by the Operating Agreement.

HB: 4885-4577-9928.1

Defendant continues to breach his fiduciary duties to the Company and faces a substantial likelihood of liability for his breaches. Indeed, Defendant is more interested in protecting himself than he is in protecting Petra IQ by bringing this action.

49. The pre-suit demand for a shareholder derivative action pursuant to Corporations Code §17709.02(b)(2) is futile and excused in this case as Defendant is the only Manager. Defendant is not a disinterested Manager who has misappropriated Company funds to himself and has ignored and accelerated his misconduct after receiving the prior correspondence from Plaintiff. Accordingly, any demand served on Defendant remains futile.

## **FIRST CAUSE OF ACTION**

### **(Removal of Managing Member)**

50. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 49 and incorporates those allegations as if fully set forth herein

51. Since July of 2018, Defendant has been a Managing Member of Petra IQ. He has been the sole Manager since November 2022.

52. Defendant, as Managing Member and 50% Owner of Petra IQ, has engaged in dishonest and/or gross abuses of his authority or discretion in connection with the affairs of Petra IQ. Specifically detailed in Paragraphs 15-45, and incorporated here, Defendant:

- Engaged in gross abuse of authority and self-dealing by withdrawing over $87,000 of the funds in Petra IQ's bank account and depositing it into his personal savings account and other unknown accounts without Plaintiff's consent.

- Engaged in gross abuse of authority and self-dealing by spending tens of thousands of Petra IQ's funds for frivolous, personal purchases not related to or for conducting the business of Petra IQ to the detriment of Petra IQ and Plaintiff.

- Engaged in gross abuse of authority and self-dealing by paying himself monthly distributions while neglecting to pay Plaintiff her share of distributions as required by the Operating Agreement.

HB: 4885-4577-9928.1

- Engaged in mismanagement of Petra IQ by causing Petra IQ to violate state law by failing to pay Petra IQ's mandatory estimated quarterly tax payments and employer and employee tax payments exposing Petra IQ to substantial interest fees and penalties.

- Engaged in mismanagement of Petra IQ by failing to keep accurate financial records and failing to turn over financial records at the request of Plaintiff to the detriment of Petra IQ and Plaintiff.

53. Defendant's dishonest acts and gross abuse of authority with reference to Petra IQ justify and require the removal of him as Manager of Petra IQ and barring him from serving in a managerial position for Petra IQ for a period prescribed by the Court.

**<u>SECOND CAUSE OF ACTION</u>**

**(For Breach of Fiduciary Duty)**

54. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 53 and incorporates those allegations as if fully set forth herein.

55. Plaintiff asserts this Second Cause of Action for Breach of Fiduciary Duty, derivatively on behalf of and for the benefit of, Petra IQ.

56. Since July of 2018, Defendant has served as Managing Member of Petra IQ. He has been the sole Manager since around November 2022.

57. As Managing Member of Petra IQ, Defendant owed a fiduciary duty of care, meaning that he was obligated to use care and diligence when making decisions on behalf of Petra IQ and Plaintiff. Defendant was required to act in good faith, with the care of a reasonable person in a like position, and with a reasonable belief that his decisions and actions were in the best interests of Petra IQ.

58. Defendant also owed Petra IQ and Plaintiff the fiduciary duty of loyalty, meaning that he had a duty of undivided loyalty to Petra IQ and Plaintiff. The duty of loyalty required him to put the interests of Petra IQ and Plaintiff above his own interests, to avoid conflicts between his own interests and those of Petra IQ, and to avoid self-dealing transactions with Petra IQ and its assets.

59. The third in the triad of basic fiduciary duties owed by Defendant to Petra IQ and Plaintiff is the duty of good faith. A breach of the duty of good faith is clear when a Manager acts with conscious disregard for the interest of Petra IQ or in a manner that reflects an intentional dereliction of duty.

11

60. Defendant breached his fiduciary obligations to Petra IQ by misappropriating Company Assets.

61. Defendant breached his fiduciary obligations to Petra IQ by withdrawing thousands of dollars from the Company's bank account and depositing it into his personal savings account or other unknown accounts, without the consent of Plaintiff, the other 50% Owner of the Company.

62. Defendant breach his fiduciary obligations to Petra IQ and Plaintiff by paying himself distributions and neglecting to pay Plaintiff her share of distributions.

63. Defendant breached his fiduciary duty of loyalty by spending Company assets on personal purchases, including food, dining, delivery, and entertainment, with no direct or indirect relation to the Company or its purpose, without the consent of Plaintiff.

64. Defendant breached his fiduciary duties by mismanaging Petra IQ and causing Petra IQ to violate state law by failing to pay Petra IQ's mandatory estimated quarterly tax payments and employer and employee tax payments.

65. Defendant acted with fraud, malice, and oppression by stealing thousands of dollars of Company proceeds and pocketing it for himself.

66. Defendant acted with fraud, malice, and oppression by spending thousands of dollars of Company funds on personal purchases wholly unrelated to the Company.

67. Petra IQ has been gravely damaged and continues to be further damaged by Defendant's various breaches of his fiduciary duties as Managing Member of Petra IQ.

68. As a direct and proximate result of Defendant's breaches of fiduciary duties, Petra IQ has sustained and continues to sustain significant damages in an amount exceeding the jurisdictional limit of this Court, to be proven at trial.

69. Defendant engaged in the aforementioned conduct with the intention to deprive Petra IQ and Plaintiff of legal rights or otherwise cause injury to Petra IQ and Plaintiff, and it was his despicable conduct that subjected Petra IQ and Plaintiff to a cruel and unjust hardship in conscious disregard of her rights, so as to justify an award of exemplary and punitive damages to be proven at trial.

HB: 4885-4577-9928.1

### THIRD CAUSE OF ACTION

#### (For Conversion)

70. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 69 and incorporates those allegations as if fully set forth herein.

71. Plaintiff asserts this Third Cause of Action for Conversion derivatively, on behalf of and for the benefit of, Petra IQ.

72. Since July of 2018, Defendant has served as Managing Member of Petra IQ.

73. Defendant has misappropriated Petra IQ's cash assets and unlawfully converted funds belonging to Petra IQ.

74. As a direct and proximate result of Defendant's illicit acts, Petra IQ has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial.

### FOURTH CAUSE OF ACTION

#### (For Money Had and Received)

75. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 74 and incorporates those allegations as if fully set forth herein.

76. Plaintiff asserts this Fourth Cause of Action for Money Had and Received derivatively, on behalf of and for the benefit of, Petra IQ.

77. As alleged above, Defendant misappropriated substantial amounts of money from Petra IQ to which he was not entitled.

78. The funds the Defendant received were intended to be used for the benefit of Petra IQ and Plaintiff.

79. The funds Defendant received were not used for the benefit of Petra IQ and Plaintiff.

80. Defendant has not returned to Petra IQ any of the money he improperly and illegally received from Petra IQ.

### FIFTH CAUSE OF ACTION

#### (For Unjust Enrichment)

81. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 80 and incorporates those allegations as if fully set forth herein.

13

HB: 4885-4577-9928.1

82. Plaintiff asserts this Fifth Cause of Action for Unjust Enrichment derivatively, on behalf of and for the benefit of, Petra IQ.

83. By his wrongful actions and violations of law, Defendant was unjustly enriched at the expense of, and to the detriment of, Petra IQ.

84. Defendant benefitted financially from his improper conduct alleged above and received compensation and other payments that were unjust in light of Defendant's bad faith conduct.

85. Because of Defendant's wrongful acts, Defendant wrongfully acquired money, together with all the profits and advantage derived from these acts, as a constructive trustee from the benefit of Plaintiff on behalf of Petra IQ.

86. As a direct and proximate result of Defendant's conduct, Defendant has been unjustly enriched and Petra IQ has been damaged in an amount exceeding the jurisdictional limit of this Court, to be proven at trial.

87. Plaintiff seeks restitution from Defendant and seeks an order from this Court disgorging all compensation obtained by Defendant due to Defendant's wrongful conduct and breach of his fiduciary duties.

88. If Plaintiff is successful in this action, the injunctive relief will be of substantial benefit to Petra IQ and Plaintiff, and such action is necessary and proper to protect the interest of Petra IQ and Plaintiff.

## **SIXTH CAUSE OF ACTION**

### **(For Gross Mismanagement)**

89. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 88 and incorporates those allegations as if fully set forth herein.

90. Plaintiff asserts this Sixth Cause of Action for Gross Mismanagement derivatively, on behalf of and for the benefit of, Petra IQ.

91. Since July of 2018, Defendant has served as Managing Member of Petra IQ with 50% ownership interest and participated in the operation of Petra IQ's business.

92. Defendant owed a duty to Petra IQ and Plaintiff to act in good faith and to act loyally in the best interests of Petra IQ.

14

VERIFIED MEMBER DERIVATIVE COMPLAINT

HB: 4885-4577-9928.1

93. Defendant, by his actions or inactions, directly abandoned and abdicated his responsibilities and duties as Managing Member of Petra IQ.

94. As a direct and proximate result of Defendant's gross mismanagement and breaches of duties alleged herein, Petra IQ has sustained and continues to sustain significant damages and injuries.

95. As a result of the misconduct and breaches of duty alleged in this Complaint, Defendant is liable to Petra IQ.

**SEVENTH CAUSE OF ACTION**

**(For Accounting under RULLCA §§ 17704.10(b)(1), 17701.13(d)(6) – (7))**

96. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 95 and incorporates those allegations as if fully set forth herein.

97. Plaintiff asserts this Seventh Cause of Action for Accounting derivatively, on behalf of and for the benefit of, Petra IQ.

98. On June 22, 2023, Plaintiff submitted a formal demand to inspect the Company's books and records pursuant to California's Revised Uniform Limited Liability Company Act ("RULLCA") §§ 17704.10(b)(1), 17701.13(d)(6) – (7)) and Article IV, Section B of the Company's Operating Agreement. Despite multiple informal and formal requests, Defendant refused to produce any current profit-loss statements, balance sheets, or cash flow statements as requested.

99. As alleged in the Complaint, Defendant had and continues to have a fiduciary duty and relationship with Petra IQ, requiring him to act only in the best interest of Petra IQ, and not to engage in any acts or omissions which would cause Petra IQ to suffer any harm or damages.

100. As further alleged in this Complaint, Defendant solely maintained and controlled Petra IQ's financial books and records. Plaintiff is not aware and cannot ascertain the full amounts Defendant profited from his conversion of the Company's assets, or from otherwise misappropriating funds belonging to Petra IQ.

101. Accordingly, Petra IQ is entitled to a full and complete accounting to all amounts Defendant received as profits from his conversion of the Company's assets, or otherwise misappropriated from Petra IQ's accounts, secreted, misplaced, or otherwise used or paid without Petra IQ's informed

HB: 4885-4577-9928.1

1  consent. Wherefore, the full amount owed and becoming due to Petra IQ can only be determined

2  pursuant to a full and accurate accounting of all books and records of the Company.

3

4       **WHEREFORE,** Plaintiff prays for judgment against Defendant, as follows:

5       ON THE FIRST CAUSE OF ACTION

6       1.  Removal of Defendant as Manager of Petra IQ; and

7       2.  Order barring Defendant from serving in a managerial position for Petra IQ for a

8            minimum of five years.

9       ON THE SECOND CAUSE OF ACTION

10      1.  For compensatory damages in the sum according to proof at trial, together with pre-

11           judgment interest;

12      2.  For reasonable attorney's fees in an amount to be proven at trial; and

13      3.  An award of punitive and exemplary damages.

14      ON THE THIRD CAUSE OF ACTION

15      1.  For compensatory damages in the sum according to proof at trial, together with pre-

16           judgment interest; and

17      2.  For reasonable attorney's fees in an amount to be proven at trial.

18      ON THE FOURTH CAUSE OF ACTION

19      1.  For compensatory damages in the sum according to proof at trial, together with pre-

20           judgment interest; and

21      2.  For reasonable attorney's fees in an amount to be proven at trial.

22      ON THE FIFTH CAUSE OF ACTION

23      1.  For an Order requiring Defendant to show cause, if he has any, why he should not be

24           enjoined during the pendency of this action;

25      2.  For a temporary restraining order, a preliminary injunction, and a permanent injunction,

26           all enjoining Defendant from the conduct described in this cause of action;

27      3.  For an order of disgorgement; and

28      4.  For reasonable attorney's fees in an amount to be proven at trial.

VERIFIED MEMBER DERIVATIVE COMPLAINT
HB: 4885-4577-9928.1

1

ON THE SIXTH CAUSE OF ACTION

2 1. For compensatory damages in the sum according to proof at trial, together with pre-

3   judgment interest; and

4 2. For reasonable attorney's fees in an amount to be proven at trial.

5

ON THE SEVENTH CAUSE OF ACTION

6 1. For an Order requiring the Defendants produce a full and complete accounting of all

7   amounts Defendant received as profits from his conversion of the Company's assets, or

8   otherwise misappropriated from Petra IQ's accounts, secreted, misplaced, or otherwise

9   used or paid without Petra IQ's informed consent.

10

FOR ALL CAUSES OF ACTION:

11 1. For an award of costs incurred by Plaintiff in bringing this action for an on behalf of Petra

12   IQ; and

13 2. For such other relief as the Court may deem proper.

14

15 DATED: August 13, 2024     HUSCH BLACKWELL LLP

16

17             By:

18               KEVIN KHACHATRYAN
                CARA M. ARNOLD

19             Attorneys for Plaintiff,

20             MARCI BERTUZZI, DERIVATIVELY ON BEHALF
             OF PETRA IQ

21

22

23

24

25

26

27

28

17

HB: 4885-4577-9928.1

## VERIFICATION

CASE TITLE: Marci Bertuzzi, derivatively on behalf of Petra IQ v. Timothy Mutton, and Petra IQ.

I, Marci Bertuzzi, declare:

I am the Plaintiff, filing derivatively on behalf of Petra IQ in the above-entitled matter.

I have read the foregoing VERIFIED MEMBER DERIVATIVE COMPLAINT ON BEHALF OF PETRA IQ and know the contents thereof.

The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 13, 2024, at Austin, Texas.


Signed by:

*Marci Bertuzzi*

AAC8C553C8BB4E7...

Marci Bertuzzi

VERIFIED MEMBER DERIVATIVE COMPLAINT